UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| MEREK BROWN and NEUSA MONTEIRO, | * * * * | |
| Plaintiffs, | * * | |
| v. | * * * | Civil Action No. 24-cv-12048-ADB |
| CITY OF BROCKTON, OFFICER TONY MONTEIRO (in his individual capacity), SGT. KENNETH LOFTSTROM (in his individual capacity), CAPTAIN ARTHUR MCNULTY (in his individual capacity), CHIEF BRENDA PEREZ (in her individual and official capacities), and MAYOR ROBERT F. SULLIVAN (in his official capacity), | * * * * | |
| Defendants. | | |

**MEMORANDUM AND ORDER**

BURROUGHS, D.J.

Plaintiffs Merek Brown ("Brown") and Neusa Monteiro ("Plaintiff Monteiro," with Brown, "Plaintiffs") bring this action against the City of Brockton ("Brockton"), Brockton's mayor, Robert F. Sullivan ("Sullivan"), and chief of police, Brenda Perez ("Perez"), as well as three Brockton police officers, Tony Monteiro ("Defendant Monteiro"), Kenneth Lofstrom ("Lofstrom"),[1] and Arthur McNulty ("McNulty"), alleging violations of their civil rights under 42

---

[1] In the case caption, but nowhere else in the First Amended Complaint, Lofstrom's name is spelled as "Loftstrom," which the Court assumes is a typographical error.

U.S.C. § 1983, as well as various state-law torts.  [ECF No. 11 ("First Amended Complaint" or "FAC")].   Defendant Monteiro has not responded to the First Amended Complaint, but all other defendants (the "Moving Defendants") move to dismiss Plaintiffs' claims against them under Federal Rule of Civil Procedure 12(b)(6).  [ECF No. 16].  For the reasons set forth below, the motion is **GRANTED IN PART** and **DENIED IN PART**.

I.     **BACKGROUND**

A.     **Factual Background**

The following facts are drawn from the First Amended Complaint.  For purposes of this motion, the Court "accept[s] as true all well-pleaded facts alleged in the complaint and draw[s] all reasonable inferences therefrom in the pleader's favor."  Lawrence Gen. Hosp. v. Cont'l Cas. Co., 90 F.4th 593, 598 (1st Cir. 2024) (quoting Lanza v. Fin. Indus. Regul. Auth., 953 F.3d 159, 162 (1st Cir. 2020)).

On September 13, 2021, Brown, a minor who is Black, and about thirteen other students were riding home on a school bus in Brockton, Massachusetts.  [FAC ¶ 9].  Brown threw an empty plastic cup out an open window, and it landed near Defendant Monteiro, a Brockton police officer who was managing traffic nearby.  [Id. ¶¶ 10–11].  When Defendant Monteiro saw the cup, he became "visibly agitated," activated the lights on his police cruiser, and "intercepted and forcibly stopped" the school bus.  [Id. ¶ 12].

Defendant Monteiro got on the bus and "aggressively confront[ed]" the students, including Brown, demanding to know who had thrown the cup.  [FAC ¶¶ 13–14].  When no one came forward, he began insulting the students and "questioning their courage and integrity," saying, among other things, "Whoever threw it got very lucky.  Because you're a little p-u-s-s-y. Because if you were a man, you would tell me, I did it.  And we would go outside and talk a

couple of minutes. That's how a man does it." [Id. ¶ 15]. He leaned into a student's seat, pointed a finger in their face, and swatted their phone from their hand, saying "You hear me? Don't be rude. I'll leave when I decide to leave." [Id. ¶ 16]. Defendant Monteiro was about to leave the bus, when he overheard a student say the word "bitch," and returned to berate the students, saying, "That little punk who threw that, we will be dealing in the streets one day. I pray for that." [Id. ¶ 18].

As Defendant Monteiro was attempting to leave the bus, Brown said, "Throw a phone again. Let me record it." [FAC ¶ 19]. Defendant Monteiro was "visibly angered," and went back toward Brown, asking him, "Did you just say that?" [Id.]. Brown asked Defendant Monteiro to "back up," but Defendant Monteiro attempted to grab Brown's phone, and, in the ensuing struggle, shouted at him, grabbed his arms, and pulled his hair. [Id. ¶ 20]. Brown ultimately dropped his phone and Defendant Monteiro's sunglasses "went flying through the air." [Id.]. Defendant Monteiro then "ordered . . . Brown off the bus," and, once outside, "challenged him to fight him, stating it would be man to man." [Id. ¶ 21]. Parts of Defendant Monteiro's interactions with the students were captured on video by the bus company, one of the students, and Brown. [Id. ¶ 9].

When Plaintiff Monteiro,[2] Brown's mother, who is Black, saw video footage of Defendant Monteiro attacking her son, she was "deeply disturbed" and went to the Brockton Police Department to file a complaint against Defendant Monteiro. [FAC ¶¶ 22–23]. She told a Brockton police officer, Rozie Vazquez-Browne ("Vazquez-Browne"), about the incident and showed her the video taken by the students on the bus. [Id. ¶¶ 24–25]. Vazquez-Browne sought

---

[2] Plaintiff Monteiro and Defendant Monteiro are apparently not related. See [ECF No. 21 at 2 n.2].

to minimize Defendant Monteiro's behavior, commenting that it was "not like him" and that he "might have been having a 'bad day.'" [Id. ¶ 26]. She instructed Plaintiff Monteiro to complete a complaint report and also suggested that Plaintiff Monteiro call Defendant Monteiro "to resolve the matter." [Id.]. She then submitted Plaintiff Monteiro's complaint to the Brockton Police Department's Internal Affairs Unit, which is overseen by McNulty, and Lofstrom was assigned to investigate the complaint. [Id. ¶ 27]. Vazquez-Browne had not requested a copy of the videos of Defendant Monteiro's confrontation with the students, [id. ¶ 26], but Lofstrom later asked Plaintiff Monteiro to forward the videos to him, [id. ¶ 28].

Defendant Monteiro eventually learned that Plaintiff Monteiro had filed a complaint against him, and "arranged for an intermediary from the Brockton Police Department to contact" her and propose a face-to-face meeting at a local supermarket "to persuade her to drop her complaint." [FAC ¶ 29]. After she "rejected the invitation," [id. ¶ 30], on September 21, 2021, Defendant Monteiro applied for a criminal complaint against Brown, "charging him with felony assault and battery with a dangerous weapon, and threats," [id. ¶ 31]. He supported his application with a narrative of what had happened on the school bus, [id. ¶ 32], which, according to Plaintiffs, contained "numerous fabrications," [id. ¶ 33]; see also [id. ¶¶ 46–49]. At a hearing on the application in October 2021, Defendant Monteiro "offered false testimony to ensure that a complaint would be issued against . . . Brown." [Id. ¶ 34]. After the hearing, Defendant Monteiro called Plaintiff Monteiro, and "again tried to coerce her into withdrawing her internal affairs complaint by threatening that . . . Brown would be found guilty if charges were pursued," but she refused. [Id. ¶ 35]; see also [id. at 31–32, ¶ 159].

On December 27, 2021, Plaintiff Monteiro, in turn, "acting as the next friend of . . . Brown," applied for a criminal complaint for assault and battery against Defendant

4

Monteiro.  [FAC ¶ 36].  On April 15, 2022, a complaint was formally issued against Defendant

Monteiro, [id.], and, on July 11, 2022, Defendant Monteiro in Hingham District Court "admitted

to facts sufficient for a finding of guilt on the assault and battery charges, which were continued

without a finding for one year," [id. ¶ 37].  Neither Defendant Monteiro, nor Lofstrom, McNulty,

or Perez "took steps to terminate the bogus felony charges . . . against . . . Brown," however, [id.

¶ 38], and Brown was ultimately required to appear for trial in Brockton District Court on

September 23, 2022, [id. ¶ 39].  Defendant Monteiro did not appear to support the charges, [id.

¶ 40], which were dismissed "due to the lack of prosecutorial support and the undeniable

evidence of [Defendant] Monteiro's misconduct," [id. ¶ 41].

The First Amended Complaint contains allegations about "what [Brockton] purports to

be" an Internal Affairs investigation memorandum, which was attached to Defendants' initial

motion to dismiss.  [FAC ¶¶ 42–45, 51]; see also [ECF No. 10-1].  That document is dated

November 20, 2021, and addressed by Lofstrom to McNulty, [FAC ¶ 42], and Plaintiffs allege,

upon information and belief, that it was also provided to Perez, "who is responsible for

disciplining officers," [id. ¶ 43].  Plaintiffs criticize the memorandum for "deliberately ignor[ing]

the indisputable fact that [Defendant] Monteiro's application for the criminal complaint is based

on fabrications," [id. ¶ 51], as shown by "the audio-visual evidence" provided to Brockton, [id.

¶ 52].  The First Amended Complaint also refers to two additional documents filed by Brockton

in this action: (1) a April 21, 2022 letter in which Perez notified Defendant Monteiro that he had

been placed on paid leave based on the issuance of a criminal complaint against him; and (2) the

criminal complaint and the criminal docket for the charges against Defendant Monteiro, which

show the disposition of the charges against him.  [Id. ¶ 45]; see also [ECF No. 10-1 at 11–12

(letter)]; [id. at 15–21 (criminal complaint and docket)].

Plaintiffs claim that Defendants' actions reflect various policies or customs of Brockton, e.g., [FAC ¶¶ 209–11], and their First Amended Complaint contains allegations about prior civil-rights cases brought against Brockton, [id. ¶¶ 56–67, 70, 72–77], which Plaintiffs say "collectively underscore a pervasive pattern of racial bias within Brockton's city institutions," [id. ¶ 77], and which are discussed further infra.  Plaintiffs also claim that, "[d]espite leadership changes . . . the systemic issues within the Brockton Police Department remain unaddressed," and that Brockton "condones the prosecution of citizens whom officials of its Police Department know are not guilty of the crimes they are charged with but are only being charged to conceal officer misconduct." [Id. ¶ 68].  These issues, Plaintiffs say, "emboldened and permitted [Defendant] Monteiro, . . . Lofstrom, . . . McNulty, and . . . Perez to believe they could violate . . . Brown's and [Plaintiff] Monteiro's constitutional rights." [Id. ¶ 69].

### B.    Procedural History

On August 9, 2024, Plaintiffs initiated this action, naming Brockton, Defendant Monteiro, and Vazquez-Browne as defendants.  [ECF No. 1].  Defendant Monteiro was served with a copy of the summons and complaint on August 22, 2024, but did not respond to the complaint.  See [ECF No. 4].  After Brockton and Vazquez-Browne moved to dismiss, [ECF No. 9], Plaintiffs filed the operative First Amended Complaint, which dropped Vazquez-Browne, but added Sullivan, Perez, Lofstrom, and McNulty as defendants, [FAC].  On December 19, 2024, the Moving Defendants moved to dismiss the First Amended Complaint for failure to state a claim, [ECF No. 16], and, on January 10, 2025, Plaintiffs opposed the motion, [ECF No. 20].

## II.    LEGAL STANDARD

In reviewing a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the Court must accept all well-pleaded facts as true, analyze those facts in the light most favorable to

the plaintiff, and draw all reasonable factual inferences in favor of the plaintiff.  See Gilbert v.

City of Chicopee, 915 F.3d 74, 80 (1st Cir. 2019).  "[D]etailed factual allegations" are not

required, but the complaint must set forth "more than labels and conclusions," Bell Atl. Corp. v.

Twombly, 550 U.S. 544, 555 (2007), and must contain "factual allegations, either direct or

inferential, respecting each material element necessary to sustain recovery under some actionable

legal theory," Gagliardi v. Sullivan, 513 F.3d 301, 305 (1st Cir. 2008) (internal quotations

omitted) (quoting Centro Médico del Turabo, Inc. v. Feliciano de Melecio, 406 F.3d 1, 6 (1st Cir.

2005)).  The alleged facts must be sufficient to "state a claim to relief that is plausible on its

face." Twombly, 550 U.S. at 570.

     "To cross the plausibility threshold a claim does not need to be probable, but it must give

rise to more than a mere possibility of liability." Grajales v. P.R. Ports Auth., 682 F.3d 40, 44–

45 (1st Cir. 2012) (citing Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)).  "A determination of

plausibility is 'a context-specific task that requires the reviewing court to draw on its judicial

experience and common sense.'"  Id. at 44 (quoting Iqbal, 556 U.S. at 679).

## III.    DISCUSSION

     The Moving Defendants' primary arguments for dismissal are that Plaintiffs have failed

to state a § 1983 claim against Brockton under Monell v. Department of Social Services, 436

U.S. 658 (1978), and that Lofstrom, McNulty, and Perez are entitled to qualified immunity as to

Plaintiffs' § 1983 claims against them.  [ECF No. 17 at 7–19].  The parties, however, also raise

three threshold issues that the Court addresses first.

     First, the Moving Defendants argue that the First Amended Complaint violates Federal

Rule of Civil Procedure 8 because it does not sufficiently indicate which claims are brought

against which defendant and lumps together the individual defendants, without distinguishing

between their actions.  [ECF No. 17 at 4–6].  Rule 8 requires a complaint to include "a short and

plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2),

which must "give the defendant fair notice of what the . . . claim is and the grounds upon which

it rests," Twombly, 550 U.S. at 555 (citation omitted).  To afford defendants a "meaningful

opportunity to mount a defense," Díaz-Rivera v. Rivera-Rodríguez, 377 F.3d 119, 123 (1st Cir.

2004) (citation omitted), it must "at least set forth minimal facts as to who did what to whom,

when, where, and why," Educadores Puertorriqueños en Acción v. Hernández, 367 F.3d 61, 68

(1st Cir. 2004).  That said, "group pleadings," are not impermissible per se, and "[a]t the motion

to dismiss stage, a complaint generally will only be dismissed where it is entirely implausible or

impossible for the grouped defendants to have acted as alleged."  Burke v. Walsh, No. 23-cv-

11798, 2024 WL 3548759, at *5 (D. Mass. June 5, 2024) (quoting Zond, Inc. v. Fujitsu

Semiconductor Ltd., 990 F. Supp. 2d 50, 53 (D. Mass. 2014)).  The First Amended Complaint

clears this low bar.  Contrary to the Moving Defendants' argument, it clearly identifies which

claims are brought against which defendants.[3]  See generally [FAC ¶¶ 80–245].  It also details,

---

[3] The Moving Defendants also complain that "it is . . . unclear whether Plaintiffs are asserting
claims against . . . Perez in her official capacity . . . or in her individual capacity in each count
that specifically names [her].  [ECF No. 17 at 5–6].  "Personal-capacity suits seek to impose
personal liability upon a government official for actions he takes under color of state law."
Kentucky v. Graham, 473 U.S. 159, 165 (1985).  "Official-capacity suits, in contrast, 'generally
represent only another way of pleading an action against an entity of which an officer is an
agent.'"  Id. (quoting Monell, 436 U.S. at 690 n.55).  The distinction is "more than 'a mere
pleading device,'" Hafer v. Melo, 502 U.S. 21, 27 (1991) (quoting Will v. Mich. Dep't of State
Police, 491 U.S. 58, 65 (1989)), and courts "may not simply rely on the characterization of the
parties in the complaint," but, rather, must determine who "is the real party in interest," Lewis v.
Clarke, 581 U.S. 155, 162 (2017); see also Powell v. Alexander, 391 F.3d 1, 22 (1st Cir. 2004)
(adopting "course of proceedings" test for determining whether suit is for individual or official
liability).  While "it is a far better practice" for complaints to specify the capacity in which
defendants are being sued, such specificity is not required, Powell, 391 F.3d at 22, and, in this
instance, it seems reasonably clear that all § 1983 claims against Perez except Count XV (and,

albeit in somewhat conclusory fashion, the Moving Defendants' actions that form the basis of

Plaintiffs' claims, claiming, for instance, that they failed to intervene when Defendant Monteiro

retaliated against Plaintiff Monteiro, [id. ¶ 124], or "implicit[ly] endors[ed]" his retaliation

against Brown, [id. ¶ 132]. "[T]here is no heightened pleading requirement in civil rights

actions," Galego v. City of Fall River, No. 22-cv-12243, 2023 WL 8039295, at *7 (D. Mass.

Nov. 20, 2023), and the Court is also mindful that "[c]ertain information," such as the precise

involvement of each of the Moving Defendants in the internal investigation of Defendant

Monteiro, "may often be unavailable to [plaintiffs] at this early stage of litigation," Rodríguez-

Rivera v. Allscripts Healthcare Sols., Inc., 43 F.4th 150, 172 (1st Cir. 2022). The First Amended

Complaint sufficiently complies with Rule 8 and will not be dismissed on that ground.

Second, the Moving Defendants argue that all official-capacity claims against Sullivan

and Perez should be dismissed as duplicative of Plaintiffs' claims against the City. [ECF No. 17

at 6–7]. Plaintiffs concede that official-capacity claims are treated as claims against the

municipality but argue that dismissing the claims against Sullivan and Perez "would obscure [the

officials'] legal and practical significance." [ECF No. 21 at 9]. It is well-settled that "there is

no . . . need to bring official-capacity actions against local government officials, for under

Monell, local government units can be sued directly," Graham, 473 U.S. at 167 n.14, and courts

routinely dismiss duplicative official-capacity claims in these circumstances, e.g., Decotiis v.

Whittemore, 635 F.3d 22, 38 n.19 (1st Cir. 2011); Grenier v. City of Springfield, No. 23-cv-

30011, 2024 WL 111999, at *4 (D. Mass. Jan. 10, 2024); cf. Rosaura Bldg. Corp. v.

---

perhaps, Count X, which refers to "municipal liability," [FAC at 34]), are pure individual-
capacity claims, not least because Perez has asserted qualified immunity against all federal
claims except Count XV, Powell, 391 F.3d at 23. Accordingly, the Court construes all claims
except Count XV as individual-capacity claims.

<u>Municipality of Mayaguez</u>, 778 F.3d 55, 62 (1st Cir. 2015) (affirming dismissal of claims against municipality where district court had granted summary judgment in favor of mayor on official-capacity claims).  Here, the Moving Defendants do not clearly identify which claims they deem to be official-capacity claims, but Sullivan, who is sued in his official capacity only, [FAC ¶ 8], is named as a defendant only in Plaintiffs' <u>Monell</u> claim (Count XV), which is also brought against Brockton and Perez, [<u>id.</u> ¶¶ 205-225].  To the extent Count XV is brought against Sullivan and Perez, it is a redundant official-capacity claim and is **DISMISSED**.

Third, Plaintiffs argue that the Court should not rely on the internal-affairs and incident reports that Defendants attached to their initial and renewed motions to dismiss.  [ECF No. 21 at 10].  While Plaintiffs are correct that, on a motion to dismiss, the Court "ordinarily may only consider facts alleged in the complaint and exhibits attached thereto," <u>Freeman v. Town of Hudson</u>, 714 F.3d 29, 35 (1st Cir. 2013), it may also consider certain extrinsic documents, including "documents the authenticity of which [is] not disputed by the parties . . . official public records; . . . documents central to plaintiffs' claim . . . [and] . . . documents sufficiently referred to in the complaint," <u>id.</u> at 36 (quoting <u>Watterson v. Page</u>, 987 F.2d 1, 3 (1st Cir. 1993)).  This rule would appear to squarely embrace the reports in question, which Plaintiffs discuss at length in their First Amended Complaint, [FAC ¶¶ 42–51], and to which their First Amended Complaint links, [<u>id.</u> ¶ 42 n.10].  Plaintiffs argue that the Court nevertheless cannot consider the reports because "Plaintiffs explicitly challenge the[ir] accuracy . . . alleging fabrication and falsification."  [ECF No. 21 at 10].  The Court is skeptical of this argument.  Plaintiffs do not appear to argue that the reports are not <u>authentic</u>, that is, true copies of the internal-affairs and incident reports prepared by the Moving Defendants, but, rather, that the reports are not <u>accurate</u>, which is not a basis for disregarding them.  See <u>Kling v. Fid. Mgmt. Tr. Co.</u>, 270 F. Supp. 2d

121, 128 (D. Mass.) ("[A]lthough [plaintiff] states that he disputes the authenticity of the

documents, he presents no substantive argument that relies on either the content or authenticity

of the documents."), decision modified, 291 F. Supp. 2d 1 (D. Mass. 2003).  The Court is also

not convinced that a mere dispute over the documents' authenticity means that it cannot consider

them if they fall within a different category of permissible extrinsic evidence, such as

"documents sufficiently referred to in the complaint."  Freeman, 714 F.3d at 36 (quoting

Watterson, 987 F.2d at 3); see also Foley v. Wells Fargo Bank, N.A., 772 F.3d 63, 74 (1st Cir.

2014) (treating categories as separate).  Nevertheless, out of an abundance of caution, the Court

will not rely on any extrinsic evidence in resolving the Moving Defendants' motion to dismiss.

Turning to the merits of Plaintiffs' Monell claim (Count XV), the Moving Defendants

argue that Plaintiffs have failed to allege an unconstitutional municipal policy, custom, or

practice or that Brockton was deliberately indifferent to Plaintiffs' constitutional rights.  [ECF

No. 17 at 9–14].  Plaintiffs respond that they have sufficiently alleged that Perez, acting as

Brockton's "final policymaker," ratified other officers' unconstitutional actions against

Plaintiffs, [ECF No. 21 at 12–13]; that Brockton has a "longstanding custom of tolerating

excessive force, fabricating evidence, retaliating against whistleblowers, and racially

discriminating against Black residents," [id. at 13]; and that "Brockton's failure to adequately

train or supervise officers" caused their constitutional injuries, [id. at 13–14].  Plaintiffs also

argue that they have sufficiently pled causation for purposes of their Monell claim.  [Id. at 14].

The Court agrees with the Moving Defendants that Plaintiffs have not stated a Monell claim

against Brockton.

Section 1983 imposes "liability on a government that, under color of some official policy,

'causes' an employee to violate another's constitutional rights."  Monell, 436 U.S. at 692.  "[A]

plaintiff must show that the violation occurred as a result of the municipality's 'policy or custom.'" Freeman, 714 F.3d at 38 (quoting Monell, 436 U.S. at 694). "Official municipal policy includes the decisions of a government's lawmakers, the acts of its policymaking officials, and practices so persistent and widespread as to practically have the force of law." Connick v. Thompson, 563 U.S. 51, 61 (2011). After-the-fact ratification by a municipal policymaker may give rise to liability under Monell, but "that municipal approval must be active, not passive," and must embrace "both the 'subordinate's decision and the basis for it.'" Lavigne v. Great Salt Bay Cmty. Sch. Bd., 146 F.4th 115, 128 (1st Cir. 2025) (quoting Saunders v. Town of Hull, 684 F.3d 324, 330 (1st Cir. 2017)); see also id. ("'[S]imply going along with [a subordinate's] discretionary decisions' or 'mere[ly] fail[ing] to investigate the basis of a subordinate's discretionary decisions' does not equal ratification." (quoting City of St. Louis v. Praprotnik, 485 U.S. 112, 130 (1988) (plurality opinion))). An unconstitutional custom "must be attributable to the municipality," that is, it must be "so well settled and widespread that the policymaking officials of the municipality can be said to have either actual or constructive knowledge of it yet did nothing to end the practice." Whitfield v. Melendez-Rivera, 431 F.3d 1, 13 (1st Cir. 2005) (quoting Bordanaro v. McLeod, 871 F.2d 1151, 1156 (1st Cir. 1989)). Evidence of a single incident of a constitutional deprivation "is insufficient, in and of itself, to establish a municipal 'custom or usage' within the meaning of Monell." Mahan v. Plymouth Cnty. House of Corrs., 64 F.3d 14, 16–17 (1st Cir. 1995); see also Santiago v. Fenton, 891 F.2d 373, 382 (1st Cir. 1989) ("[W]e cannot hold that the failure of a police department to discipline in a specific instance is an adequate basis for municipal liability under Monell."). Evidence of "multiple instances of misconduct" that suggest a "systemic pattern of activity," by contrast, may support an inference of a municipal custom. Doe v. Town of Wayland, 179 F. Supp. 3d 155, 173 (D. Mass 2016); see

also Barker v. City of Bos., 795 F. Supp. 2d 117, 124 (D. Mass. 2011) (requiring "persistent

failure to discipline").  Finally, a municipality's failure to train its employees can be an

actionable custom under § 1983, see City of Canton v. Harris, 489 U.S. 378, 388–90 (1989), but

"[a] municipality's culpability for a deprivation of rights is at its most tenuous where a claim

turns on a failure to train," Connick, 563 U.S. at 61, and "[t]riggering municipal liability on a

claim of failure to train requires a showing that municipal decisionmakers either knew or should

have known that training was inadequate but nonetheless exhibited deliberate indifference to the

unconstitutional effects of those inadequacies," Haley v. City of Bos., 657 F.3d 39, 52 (1st Cir.

2011).

Here, Plaintiffs have not adequately alleged an unconstitutional policy or custom

attributable to Brockton.  With respect to their ratification theory, they allege only that Perez

"receiv[ed] clear video evidence of [Defendant] Monteiro's violent attack on . . . Brown and his

retaliatory actions against Plaintiff . . . Monteiro" and "failed to intervene, discipline [Defendant]

Monteiro appropriately, or stop the baseless prosecution of . . . Brown."  [FAC ¶ 212]; see also

[id. ¶¶ 214, 217, 223].  In other words, Plaintiffs' allegations are based on Perez's "inaction,"

[id. ¶ 217], but, to give rise to liability under Monell, approval by Perez (assuming that she was a

final policymaker for Brockton), would have to have been "active, not passive," Lavigne, 146

F.4th at 128.  With respect to Brockton's alleged unconstitutional customs, Plaintiffs rely

primarily on three cases, Williamson v. City of Brockton, No. 18-cv-11273 (D. Mass. dismissed

Jan. 21, 2022), Baez v. City of Brockton, No. 16-11865 (D. Mass. dismissed Sept. 26, 2018), and

Lopes v. City of Brockton, C.A. No. 2013-01350-A (Mass. Super. Ct.).  [FAC ¶¶ 209–11].[4]

Even based on Plaintiffs' allegations alone, it is hard to see how Baez, a discrimination and

retaliation case brought by a Brockton police officer against Brockton, [id. ¶ 76], or Lopes, a

class action lawsuit challenging Brockton's hiring practices as racially biased, [id. ¶ 77], have

anything to do with, let alone provide plausible support for, the unconstitutional municipal

customs that Plaintiffs allege here, that is, a "custom of prosecuting Black residents based on

fabricated charges to protect police officers," [id. ¶ 209], a "longstanding failure to discipline

officers for racially discriminatory behavior," [id. ¶ 210], and a "failure to investigate or hold

accountable officers engaging in constitutional violations, even when presented with clear video

evidence contradicting officers' false claims," [id. ¶ 211].  Williamson, in which, according to

the First Amended Complaint, "a disabled Black resident[] was wrongfully prosecuted for

allegedly threatening Brockton Parking Control Officer Jorge Delgado with a knife during a

dispute over a parking ticket in March 2017," [id. ¶ 56], comes somewhat closer, but, even

drawing all reasonable inferences in Plaintiffs' favor, that case, which involved a single officer

working for a different city agency and ended in a settlement, does not plausibly suggest a

"systemic pattern of activity" that would have put Brockton on notice of an unconstitutional

---

[4] The First Amended Complaint also refers to "[e]vidence from" United States ex rel. Williams v. City of Brockton, No. 12-12193 (D. Mass.), citing an "amended complaint" that "alleges that the BPD misrepresented compliance with federal civil rights requirements to obtain millions of dollars in federal funds."  [FAC ¶ 70].  A complaint is not "evidence," and the Court notes that this litigation terminated in a judgment in Brockton's favor.  See United States ex rel. Williams v. City of Brockton, No. 12-cv-12193, 2020 WL 887706, at *1 (D. Mass. Feb. 24, 2020). Plaintiffs also mention cases cited in the complaint in Williamson that "reveal a pattern of unlawful discrimination by the BPD."  [FAC ¶¶ 72–75].  Here, as discussed infra, Plaintiffs have failed to state an underlying equal protection claim, which means that Brockton cannot, in this case, be liable under Monell for any equal protection violation.  See Young v. City of Providence ex rel. Napolitano, 404 F.3d 4, 25–26 (1st Cir. 2005).

custom, Town of Wayland, 179 F. Supp. 3d at 173.  Finally, with respect to Plaintiffs' failure-to-train theory, the First Amended Complaint contains no specific allegations about Brockton's training or supervision of its officers, let alone any allegations that municipal decisionmakers either knew or should have known that this training or supervision was inadequate.  Accordingly, Plaintiffs' Monell claim against Brockton (Count XV) is **DISMISSED**.

The Moving Defendants argue that the remaining individual-capacity § 1983 claims against them (Counts IV, V, X, XI, XII, XIII, XIV) are barred by qualified immunity.  [ECF No. 17 at 14–15].  Specifically, they argue that Plaintiffs' claims against them are premised entirely on their alleged failure to intervene to prevent Defendant Monteiro's misconduct, and that this failure to intervene did not violate any established constitutional right.  [Id. at 15–19].  Plaintiffs respond that qualified immunity is "unavailable at the motion-to-dismiss stage," [ECF No. 21 at 16], and that the Moving Defendants violated Plaintiffs' clearly established rights of "freedom from retaliation for protected petitioning activity, equal protection against racial discrimination, substantive due process, and freedom from prosecution based on fabricated evidence," [id. at 19].

Qualified immunity protects public officials, in their individual capacity, "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."  Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982).  In determining whether a government official is entitled to qualified immunity, courts must consider (1) whether the facts alleged or shown by the plaintiff constitute a violation of plaintiff's constitutional rights, and (2) whether that constitutional right was clearly established at the time of the alleged violation.  Maldonado v. Fontanes, 568 F.3d 263, 269 (1st Cir. 2009) (citing Pearson v. Callahan, 555 U.S. 223, 232 (2009)).  Determining whether a right

is "clearly established" is also a two-part inquiry.  Id.  "The first sub-part requires the plaintiff to identify either 'controlling authority' or a 'consensus of cases of persuasive authority' sufficient to send a clear signal to a reasonable official that certain conduct falls short of the constitutional norm."  Alfano v. Lynch, 847 F.3d 71, 75 (1st Cir. 2017) (quoting Wilson v. Layne, 526 U.S. 603, 617 (1999)).  "The second sub-part asks whether an objectively reasonable official in the defendant's position would have known that his conduct violated that rule of law."  Id. (citing Wilson v. City of Boston, 421 F.3d 45, 57–58 (1st Cir. 2005)).  Courts may address the two parts of the qualified-immunity inquiry in any order.  See Pearson v. Callahan, 555 U.S. 223, 236 (2009).  Although "[i]t is not always possible to determine before any discovery has occurred whether a defendant is entitled to qualified immunity," Giragosian v. Bettencourt, 614 F.3d 25, 29 (1st Cir. 2010), Plaintiffs' suggestion that evaluating qualified immunity on a motion to dismiss is "rarely appropriate," [ECF No. 21 at 17], "turn[s] well-settled precedent on its head" because "[t]he Supreme Court has repeatedly 'stressed the importance of resolving immunity questions at the earliest possible stage [of the] litigation,'" Eves v. LePage, 927 F.3d 575, 583 n.5 (1st Cir. 2019) (quoting Wood v. Moss, 572 U.S. 744, 755 n.4 (2014)).

Here, the Court agrees that, to the extent that Plaintiffs' claims are premised on a failure to intervene, the individual Moving Defendants are entitled to qualified immunity.  Courts in this district have repeatedly held that, in the First Circuit, officers' duty to intervene to stop a constitutional violation is not clearly established outside the excessive-force context.  See, e.g., Choy v. City of Brockton, No. 23-cv-10340, 2023 WL 3629805, at *4 (D. Mass. May 24, 2023); Perrot v. Kelly, No. 18-cv-10147, 2023 WL 2939277, at *12 (D. Mass. Feb. 15, 2023), report and recommendation adopted, No. 18-cv-10147, 2023 WL 2607763, at *1 (D. Mass. Mar. 23, 2023); Schand v. City of Springfield, 380 F. Supp. 3d 106, 135 (D. Mass. 2019); Cosenza v. City

16

of Worcester, 355 F. Supp. 3d 81, 101 (D. Mass. 2019); Echavarria v. Roach, No. 16-cv-11118, 2017 WL 3928270, at *11 (D. Mass. Sept. 7, 2017).  Here, all but one of Plaintiffs' individual-capacity § 1983 claims against the Moving Defendants are explicitly premised on a failure to intervene, and none concerns excessive force.  See [FAC ¶¶ 124 ("they permitted the fabricated charges to proceed and condoned [Defendant] Monteiro's inappropriate and criminal conduct"); 132 ("failed to intervene or rectify [Defendant Monteiro's] abuse of authority"); 169 ("failed in their duty to intervene, stop the prosecution, or discipline [Defendant] Monteiro"); 175 ("failed to intervene or take corrective action"); 182 ("failed to intervene, investigate, or discipline"); 198 "failure to intervene")].  These claims against the Moving Defendants (Counts IV, V, X, XI, XII, XIV) thus fail at the second step of the qualified-immunity analysis because the constitutional right at issue was not clearly established and are, accordingly, **DISMISSED**.

The remaining individual-capacity § 1983 claim, Count XIII, which alleges a violation of the Equal Protection Clause of the Fourteenth Amendment, fails at the first step of the qualified-immunity analysis because Plaintiffs have not plausibly alleged an equal protection violation. "To prevail on a claim of racial discrimination in violation of the Equal Protection Clause, at least in the absence of direct proof that racial animus caused the adverse action, a plaintiff must establish (1) that he was selected for adverse treatment compared with others similarly situated, and (2) that the selection for adverse treatment was based on an impermissible consideration, such as his race." Fincher v. Town of Brookline, 26 F.4th 479, 486 (1st Cir. 2022); see also Mulero-Carrillo v. Roman-Hernandez, 790 F.3d 99, 105–06 (1st Cir. 2015) ("Generally, for an equal protection claim to survive a motion to dismiss, a plaintiff must allege facts plausibly demonstrating that 'compared with others similarly situated, [the plaintiff was] selectively treated . . . based on impermissible considerations such as race." (quoting Barrington Cove Ltd.

P'ship v. R.I. Hous. & Mortg. Fin. Corp., 246 F.3d 1, 7 (1st Cir. 2001))).  Here, the Moving

Defendants argue that the First Amended Complaint contains no allegations "regarding how

[Lofstrom, McNulty, or Perez] treated people other than Plaintiffs" or that they "treated either

Plaintiff differently based on race."  [ECF No. 17 at 16].  In their opposition brief, Plaintiffs do

not respond directly to this argument, contending only that Defendant "Monteiro targeted

[Brown], a Black child, with fabricated charges to discredit his mother's complaint, a racially

discriminatory act that Defendants ratified."  [ECF No. 21 at 17].  Plaintiffs' ratification theory

hardly shows that Lofstrom, McNulty, or Perez treated Plaintiffs differently on account of their

race, and, in any event, Plaintiffs do not "compare the treatment [they] received at the hands of

the defendants with the treatment of any person similarly situated to [them]."  Estate of Bennett

v. Wainwright, 548 F.3d 155, 167 (1st Cir. 2008).  Because Plaintiffs have not plausibly alleged

selective treatment (or provided direct proof that racial animus caused any adverse action by

Lofstrom, McNulty, or Perez), they have not stated an equal protection claim against Lofstrom,

McNulty, or Perez, and Count XIII against them is **DISMISSED**.

The Moving Defendants do not specifically address Plaintiffs' state-law malicious-

prosecution claim against them (Count XIX), and it is not clear that they would be able to assert

qualified immunity regarding that claim, since "Massachusetts law is unsettled regarding the

existence of a state-law concept analogous to federal qualified immunity."  Lachance v. Town of

Charlton, 990 F.3d 14, 30 (1st Cir. 2021) (quoting Raiche v. Pietroski, 623 F.3d 30, 40 (1st Cir.

2010)).  Accordingly, and in light of the survival of Plaintiffs' claims against Defendant

Monteiro, including Count XIX, the Court will maintain supplemental jurisdiction over this

claim against the Moving Defendants at this time.  28 U.S.C. § 1367(c)(3); <u>Desjardins v. Willard</u>, 777 F.3d 43, 45 (1st Cir. 2015).[5]

## IV.    CONCLUSION

For the reasons set forth above, the Moving Defendants' motion to dismiss all claims against them, [ECF No. 15], is **<u>GRANTED IN PART</u>** as to Counts IV, V, X, XI, XII, XIII, XIV, and XV against the Moving Defendants, which are dismissed without prejudice, and **<u>DENIED IN PART</u>** as to Count XIX against the Moving Defendants.

**SO ORDERED.**

September 18, 2025                                        */s/ Allison D. Burroughs*
                                                                      ALLISON D. BURROUGHS
                                                                      U.S. DISTRICT JUDGE

---

[5] The Court notes that, to state a malicious prosecution claim against the Moving Defendants, Plaintiffs must plausibly allege that the Moving Defendants "caused . . . proceedings to be initiated" against them.  <u>Limone v. United States</u>, 579 F.3d 79, 89 (1st Cir. 2009).  The Court is skeptical that Plaintiffs' current allegations in Count XIX, which, like many of their other allegations, focus on the Moving Defendants' inaction, [FAC ¶240–45], meet that standard.  It declines, however, to dismiss Count XIX sua sponte in light of "[t]he general rule that sua sponte dismissals are erroneous unless the parties have been afforded notice and an opportunity to amend the complaint or otherwise respond."  <u>Doe v. City of Bos.</u>, 145 F.4th 142, 156 (1st Cir. 2025) (citation modified) (quoting <u>Chute v. Walker</u>, 281 F.3d 314, 319 (1st Cir. 2002)).